# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

RANDALL MORGAN, :

           Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

           Defendant. :

Case No. 3:10-cv-170

District Judge Walter H. Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on August 4, 2004, alleging disability from February 18, 2003, due to fibromyalgia, hip displacement, and pain throughout his body. *See* Tr. 57-70; 125.  The Commissioner denied Plaintiff's application  initially and on reconsideration.  *See* Tr. 36-43.  Administrative Law Judge Daniel Shell held a hearing at which Plaintiff waived his right to be represented by counsel.  (Tr. 349-80; 56).  Judge Shell subsequently determined that Plaintiff is not disabled. (Tr. 18-32).  The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that he met the insured status requirements of the Act through September 30, 2008.  (Tr. 30, finding 1).  Judge Shell also found that Plaintiff has severe musculoskeletal impairments best characterized as residual effects

3

of injuries sustained in motor vehicle accident including right lower extremity fracture and corrective surgery, lumbar spine sprain/strain, arthropathies/arthralgias, and diabetes mellitus, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (*Id.*, findings 3 and 4). Judge Shell found further that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. (Tr. 31, finding 6). Judge Shell then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and found that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (*Id.*, findings 11 and 12). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (*Id.*, finding 13).

The record contains a copy of Plaintiff's treatment notes from rheumatologist Dr. Madan dated March through May, 2003. (Tr. 146-51). When Dr. Madan first evaluated Plaintiff on March 4, 2003, he noted that Plaintiff's general examination was normal and determined that his history of widespread pain and presence of multiple tender points supported the diagnosis of chronic pain syndrome. *Id.* Subsequently, Dr. Madan identified Plaintiff's diagnoses as right subacromial bursitis, chronic pain syndrome, and insomnia. *Id.*

Plaintiff consulted with rheumatologist, Dr. Badreddine, on August 12, 2004 and reported diffuse arthralgias of 25 years duration mostly in the joints, sometimes in the rib area, and in his legs with cramping which gradually worsened in the last one and a half years primarily in the hip area, the right worse than the left. (Tr. 154-57). Dr. Badreddine reported that musculoskeletal examination revealed neck lateral rotation to the right to elicit pain on the right, left lateral rotation elicited pain on the left, right lateral bending caused pain on the left side, and that Plaintiff's right shoulder popped out a little with pain on movement especially on external and internal rotation. *Id.*

4

Dr. Badreddine also reported that Plaintiff's elbows were slightly puffy and tender, his hands revealed no evidence of synovitis, hip range of motion was significantly painful on abduction, Plaintiff had pain on external rotation and internal rotation of the right hip with limitation of internal rotation, and that Plaintiff had discomfort in his left hip on movement with mild limitation of external rotation and internal rotation. *Id.* Dr. Badreddine noted that both sacroiliacs were tender, Plaintiff had tender points for fibromyalgia including in the second costochondral junction, the neck area, trapezius, rhomboid, greater trochanteric area, the knee pad and the gluteal region. *Id.* Dr. Badreddine attributed Plaintiff's pain to arthralgias. *Id.*

On August 17, 2004, Plaintiff was involved in a motor vehicle accident and sustained multiple fractures to his right foot, ankle, and leg which required a series of surgical repairs with internal fixation and bone graft. (Tr. 162-89). In addition, Plaintiff sustained a fracture of his L2 vertebra, which was treated with a back brace and physical therapy. *Id.* After spending four weeks in the hospital he was discharged to rehabilitation for two weeks, (Tr. 191-243), following which he participated in physical therapy. (Tr. 246-55).

Plaintiff received treatment from orthopedic surgeon Dr. Lakatos from September, 2004, until February, 2005. (Tr. 300-10). Dr. Lakatos, reported in February 2005 that Plaintiff's L2 fracture had healed, but the distal tibial fracture and midfoot fractures were still healing. (Tr. 300). Dr. Lakatos noted that Plaintiff was making progress with ambulation as he was starting to take some steps around the house using a walker. *Id.*

In March, 2006, Plaintiff was hospitalized for treatment of severe abdominal and back pain and his admitting diagnosis was pancreatitis. (Tr. 260-95). Consulting gastroenterologist Dr. Bernie identified Plaintiff's diagnoses as recent acute pancreatitis from combination of drinking

and elevated triglycerides, fatty liver, obesity, now onset of diabetes, and chronic smoker. *Id.* Plaintiff was treated with medications and medical therapies and was discharged with the diagnoses of acute pancreatitis, hyperlipidemia, essential hypertension, adult onset diabetes mellitus, gross exogenous obesity, and alcohol habit. *Id.*

In May, 2006, orthopedist Dr. Lawless reported that x-rays showed a right malaligned non-united distal third tibia fracture. (Tr. 299). Dr. Lawless determined that removal of the hardware, debridement, and re-fixation were indicated. but because Plaintiff was still smoking, Dr. Lawless wanted to delay further surgical intervention. *Id.*

Plaintiff began treating with rehabilitation specialist, Dr. Magnusen, in July, 2006. (Tr. 336-38). When he first examined Plaintiff, Dr. Magnusen noted that Plaintiff had marked atrophy of the muscles of the right foot and distal ankles, he walked with a straight leg cane on the right to alleviate the pressure on the foot and ankle, and that when he walked, his right foot externally rotated and his gait was antalgic. *Id.* Dr. Magnusen also noted that Plaintiff's ankle reflexes were absent, muscle strength in his ankle was reduced, motion in the great toe was absent, and that sensation was markedly impaired in the foot and ankle which Plaintiff predominantly experienced as a burning sensation. *Id.* Dr. Magnusen noted further that a CT report from May 4, 2006, mentioned numerous fracture lines remaining evident in the distal tibia with some gaps between the sclerotic bone and that x-rays showed a non-union of the distal tibia fracture. *Id.* Dr. Magnusen opined that Plaintiff suffered from chronic pain in the right distal lower limb and foot, he recommended a special shoe to cushion Plaintiff's foot and ankle, and he prescribed medications. *Id.* Plaintiff continued to treat with Dr. Magnusen through at least February 2007, and Dr. Magnusen treated Plaintiff with pain medications and an ankle brace. (Tr. 327-35).

Consulting physician Dr. Vitols reported on January 8, 2007, that Plaintiff presented with a severely antalgic gait, manual muscle testing showed some weakness in the muscles of the right foot, and that right ankle motion was somewhat reduced, as was lumbar spine motion. (Tr. 311-26). Dr. Vitols also reported that x-rays revealed a non-union and mal-union in the distal tibia. *Id.* Dr. Vitols opined that Plaintiff could perform the lifting requirements of light work, that it was medically necessary for Plaintiff to use a cane, but that he was able to walk 25-50 feet without a cane *Id.* Dr. Vitols also opined that Plaintiff should stoop, kneel, crouch, or crawl only occasionally and that he should avoid unprotected heights and moving machinery. *Id.*

Treating family physician, Dr. Thomson, reported in March, 2007, that Plaintiff had treated with his office since July 9, 2004, that as a result of the August, 2004, motor vehicle accident, Plaintiff suffered from multiple traumas including residuals from the fractures of his right leg, compression fracture at L5, chronic pain, and narcotic dependence. (Tr. 339). Dr. Thompson also reported that Plaintiff's other medical issues included chronic benign pain state, insulin dependent diabetes mellitus, severe hyperlipidemia, elevated blood pressure, chronic recurrent pancreatitis, impotency, nicotine habit, chronic anxiety, depression, and obesity with poor physical condition. *Id.* Dr. Thomson opined that Plaintiff was totally and permanently disabled. *Id.*

Subsequent to the hearing, Judge Shell submitted medical interrogatories to a medical advisor (MA). *See,* Tr. 376-78. The MA responded to the interrogatories on May 4, 2007, and reported that Plaintiff "must use his cane and can do no more than sedentary work at this time." (Tr. 340-42). The MA also reported that Plaintiff is more limited than indicated by Dr. Vitols. *Id.* The MA opined that Plaintiff was able to sit two hours at a time and stand/walk one hour at a time for a total of two hours during an eight-hour workday. *Id.* The MA noted that Plaintiff was able to

ambulate fairly well with his cane, that the non-union issue is not totally resolved, and that Plaintiff must quit smoking in order to have surgery. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by relying on the VE's testimony because it was in response to an improper hypothetical question, by failing to ask the VE whether his testimony was consistent with the *Dictionary of Occupational Titles*, and by failing to provide Plaintiff with a fair and full hearing. (Doc. 7). The Court will first address Plaintiff's "fair and full hearing" argument.

Plaintiff argues in support of his request for remand that the Commissioner erred by failing to properly develop the record in view of the fact that Plaintiff was unrepresented at the hearing. Plaintiff's position is that Judge Shell failed to inform Plaintiff that he could cross-examine the VE and did not offer Plaintiff an opportunity to cross-examine the VE. Plaintiff also contends that Judge Shell failed to obtain all of treating physician Dr. Thomson's records, noting that treatment notes from February 2005 through May 24, 2006, appear to be missing from the file, as well as any records after May 24, 2006, and that under those circumstances, the Commissioner had a duty to obtain updated mental health treatment records.

A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted); *see also, Moon v. Sullivan,* 923 F.2d 1175 (6th Cir. 1990).

When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1051 (6th Cir. 1983). Although a court scrutinizes with care the administrative record when a claimant appears without counsel, the

8

mere fact that a claimant was unrepresented is not grounds for reversal. *Holden v. Califano,* 641 F.2d 405, 408 (6th Cir. 1981). Rather, the court examines each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing. *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 856 (6th Cir. 1986).

As noted above, at the hearing before Judge Shell, Plaintiff waived his right to be represented by counsel. (Tr. 351). In addition, Plaintiff executed a written Waiver of Representation. (Tr. 56). It is clear, then, that Plaintiff waived his right to representation. However, as the *Duncan* court instructs, this Court must examine this case on its own merits to determine whether the Commissioner provided Plaintiff with a full and fair hearing.

First, although Plaintiff brought with him to the hearing additional medical records from Dr. Magnusen and a report from Dr. Thomson, (Tr. 327-39), which Judge Shell made a part of the record, (Tr. 376-77), there is no indication that Judge Shell inquired of Plaintiff whether the record was complete. Further, while Judge Shell asked Plaintiff about his work history and his ability to perform physical activities in great detail, (Tr. 352-56; 364-70), his inquiry into Plaintiff's medical treatment history as well as his current treatment was more superficial. (Tr. 357-62). Finally, although Judge Shell explained to Plaintiff in great detail the VE's function[1], (Tr. 376; *see also,* Tr. 352), he did not explain to Plaintiff his right to cross-examine the VE nor did he give Plaintiff the opportunity to do so. *See,* Tr. 373-77.

Arguably, each of these factors, standing alone, would not provide a basis for determining that the Commissioner failed to provide Plaintiff, who was unrepresented, with a full and fair hearing. Nevertheless, this Court concludes that when they are considered together the

---

[1] Judge Shell also explained to Plaintiff the sequential evaluation process and the function of the MA. (Tr. 377-78).

9

factors do provide such a basis. Therefore, this Court concludes that the Commissioner failed to provide Plaintiff a full and fair hearing. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the essential factual issues have been resolved and that the record does not adequately establish Plaintiff's entitlement to benefits. For example, while Plaintiff was not afforded a full and fair hearing and is therefore entitled to a new hearing, there are arguably sufficient bases in the record for the Commissioner to again conclude that Plaintiff is not disabled.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is also recommended that this matter be remanded to the Commissioner for a new administrative hearing and any other administrative action necessary to make a determination as to whether Plaintiff is disabled. Finally, it is recommended that this matter be terminated on the Court's docket.

March 9, 2011.

*s/ Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).